IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 7 |
| PREHIRED LLC, ET AL., | ) | |
| | ) | Adv. Proc. No. 24-50178 (TMH) |
| Debtor. | ) | Bankr. Bap No. 25-0026 |
| JOSHUA JORDAN, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| V. | ) | |
| | ) | C.A. No. 25-679 (MN) |
| DON A. BESKRONE, In His Capacity As | ) | |
| Chapter 7 Trustee, | ) | |
| | ) | |
| Appellee. | ) | |

## **MEMORANDUM OPINION**

Joshua Jordan, pro se Appellant

F. Troupe Mickler IV, ASHBY & GEDDES, P.A., Wilmington, DE – Attorneys for Appellee

March 17, 2026
Wilmington, Delaware

*Maryellen Noreika*

**NOREIKA, U.S. DISTRICT JUDGE**

This appeal arises in the bankruptcy cases of Prehired, LLC, Prehired Accelerator, LLC, and Prehired Recruiting, LLC (together "the Debtors"), following their conversion to cases under chapter 7 and the appointment of Chapter 7 Trustee Don A. Beskrone ("Beskrone" or "the Trustee"). Pro se appellant, Joshua Jordan ("Appellant"), the Debtors' former CEO, has admitted to withdrawing $74,000 of funds from accounts belonging to the Debtors' estates without the Trustee's permission. Following two letters from the Trustee demanding that the funds be returned, Appellant filed, *inter alia,* a suit in this Court against the Trustee and his counsel, Ricardo Palacio, in their personal capacities, later adding their law firm, Ashby & Geddes, P.A. ("A&G") as a defendant.[1] *See Jordan v. Beskrone, et al.*, Case No. 25-23 (MN) (D. Del.) (the "District Court Action").[2] The District Court Action alleges all manner of harm to Appellant and his child caused by the Trustee's demand that Appellant return the money he took. Relevant here, Appellant filed the District Court Action without leave from the Bankruptcy Court as required by the *Barton* doctrine, which imposes, "as a matter of federal common law [emanating from *Barton v. Barbour,* 104 U.S. 126 (1881)], a requirement that a party seeking to sue an equity receiver must first obtain the permission of the appointing court"—here, the Bankruptcy Court. *In re VistaCare Grp., LLC*, 678 F.3d 218, 224 (3d Cir. 2012). Appellant eventually filed two motions for such permission (Adv. D.I. 32, 58), albeit in a separate adversary proceeding, *Jordan v. Beskrone,* Adv. Pro. No. 24-50178 (TMH) ("the

---

[1]   Beskrone, Palacio and A&G are collectively referred to as "Defendants" or "Appellees".

[2]   The docket of the chapter 7 cases, captioned *In re Prehired*, *LLC,* No. 22-11007 (JTD) (Bankr. D. Del.), is cited herein as "Bankr. D.I. __." The docket of the adversary proceeding, captioned *Jordan v. Beskrone,* Adv. Pro. No. 24-50178 (TMH), is cited herein as "Adv. D.I. _." The docket of the District Court Action, captioned *Jordan v. Beskrone, et al.,* C.A. No. 25-23-MN (D. Del.) is cited herein as "District Court Action D.I.__." The docket of this appeal is cited herein as "D.I. __."

Adversary Proceeding"),[3] and after the District Court Action had already been initiated. Those motions for leave were denied by the Bankruptcy Court by orders issued May 30, 2025 (Adv. D.I. 70 & 71) ("the Orders Denying Leave"), for the reasons set forth in the Bankruptcy Court's thorough accompanying opinion, *Jordan v. Beskrone, et al. (In re Prehired, LLC)*, 2025 WL 1549911 (Bankr. D. Del. May 30, 2025) (D.I. 1-1) ("the Opinion"). Appellant's appeal of the Orders Denying Leave is now before the Court. Although Appellant has since voluntarily dismissed the District Court Action,[4] Appellant's separate appeal of the Bankruptcy Court's order dismissing the Adversary Proceeding remains.[5] As briefing in that separate appeal is not yet complete, and it is unclear what issues may be raised or implicated, the Court will adjudicate Appellant's appeal of the Orders Denying Leave. For the reasons set forth below, the Orders Denying Leave will be affirmed.

## I.    BACKGROUND

### A.    The Debtors and the Chapter 7 Trustee

The Debtors initially filed chapter 11 petitions in the United States Bankruptcy Court for the Southern District of New York, before that court transferred the cases to Delaware on October 26, 2022. (Bankr. D.I. 32). On November 22, 2022, the Bankruptcy Court entered an Order converting those cases to cases under chapter 7. (Bankr. D.I. 84). The same day, Beskrone was appointed to serve as the Chapter 7 Trustee. (Bankr. D.I. 85).

---

[3]    Appellant filed the Motions for Leave giving rise to this appeal in the Adversary Proceeding asserting claims against the Trustee in his official capacity. As the Trustee (D.I. 9 at 1 n.1) and the Bankruptcy Court have each noted, however, the Motions for Leave relate to the District Court Action. *See In re Prehired,* 2025 WL 1549911, at *1 n.1.

[4]    District Court Action D.I. 29, 30.

[5]    *Jordan v. Beskrone, et al.,* C.A. No. 25-1544-MN (D. Del.); *In re Prehired*, 2025 WL 3623713 (Bankr. D. Del. Dec. 12, 2025) (dismissing second amended complaint).

Debtors Prehired Accelerator, LLC and Prehired Recruiting, LLC maintained bank accounts at Wells Fargo Bank, as reflected in their respective Schedules of Assets and Liabilities.[6]  Appellant signed each of the Schedules as the Debtors' "CEO/Owner."[7]  On December 5, 2022 and August 22, 2024, respectively, the Trustee sent correspondence to Wells Fargo Bank ("Wells Fargo") requesting that it promptly turn over to him the funds held in the Debtors' bank accounts, and provide statements for the accounts and written confirmation the accounts had been closed.[8]

**B.      Appellant's Withdrawal and the Trustee's Demand Letters**

Based on his review of the bank statements for two Wells Fargo bank accounts belonging to the Debtors ("the Wells Fargo Accounts"), the Trustee identified three wire transfers made to FourLetter, LLC ("FourLetter").[9]  It is undisputed that, more than a year into the bankruptcy case, Appellant used his pre-bankruptcy credentials to log into the Wells Fargo Accounts and transfer a total of $74,000.00 ("the Withdrawn Funds") to a FourLetter bank account via three roughly equal transfers on three consecutive business days.[10]  Through further investigation, including a review of the South Carolina Secretary of State online database, the Trustee determined that FourLetter is an entity for which Appellant was the registered agent.[11]

---

[6]      Prehired Accelerator, LLC SCHEDULES OF ASSETS AND LIABILITIES, Part I (listing Wells Fargo account x-4073) (Case No. 22-11006, Bankr. D.I. 6); Prehired Recruiting, LLC SCHEDULES OF ASSETS AND LIABILITIES, Part I (listing Wells Fargo account x-8096) (Case No. 22-11005, Bankr. D.I. 11).

[7]      *Id.*

[8]      *See* Adv. D.I. 57 (Second Amended Complaint) ("SAC") ¶ 100 (citing Adv. D.I. 3 ¶¶ 14-16).

[9]      *See* SAC Ex. 1.

[10]      *See* SAC ¶ 37.

[11]      *See* S.C. Secretary of State Business Entities Online, https://businessfilings.sc.gov/BusinessFiling/Entity/Search (search: "FourLetter") (last visited Feb. 18, 2026).

On October 10, 2024, the Trustee, through his counsel, sent correspondence to Appellant and FourLetter demanding the immediate return of the Withdrawn Funds. (SAC, Ex. 1 ("the Trustee's Demand")). On October 16, 2024, Appellant responded to the Trustee's Demand, and explained why and how he withdrew the $74,000.00 from the Wells Fargo Accounts. (SAC, Ex. 2 ("Appellant's Response")). Appellant admitted to transferring the funds from the Wells Fargo Accounts into an account(s) under the name of FourLetter, which, Appellant stated, had already spent the funds. (*Id.*). According to Appellant, he "reasonably believed" that the funds were not part of the bankruptcy estate[12] despite his having previously attested to the accounts and funds as being estate property.

October 21, 2024, the Trustee replied to Appellant's Response, again demanding turnover of the Withdrawn Funds. (SAC, Ex. 3 ("Trustee's Reply")). The Trustee's Reply concluded by suggesting that Appellant may wish to consult with counsel:

> This is, by any measure, a serious matter. As the Trustee believes your (and FourLetter's) actions may give rise to potential criminal liability (apart from the civil liability referenced herein), you may wish to consult with appropriate counsel. All rights are reserved.

### C.    The Adversary Proceeding and the District Court Action

Three days later, Appellant filed his original complaint initiating the Adversary Proceeding, asserting claims against the Trustee in his capacity as such. After the Trustee answered, counterclaimed against Appellant, and filed a third-party complaint against FourLetter, Appellant then amended to sue Beskrone and Palacio in their personal capacity, before dismissing them and commencing the separate District Court Action against them in this Court on January 7, 2025. The District Court Action asserts claims against Beskrone and Palacio in their personal capacities. Beskrone and Palacio moved to dismiss the Complaint in the District Court Action. Appellant

---

[12]    Adv. D.I. 57 ¶ 36; *id*. Ex. 2 at 3.

4

amended his pleading, adding A&G as a defendant and seeking millions of dollars in additional damages.[13]  The Defendants moved to dismiss again on March 4, 2025, and Appellant sought leave to amend once, which the Defendants did not oppose.[14]  Among the grounds for Defendants' motions to dismiss is that Appellant was barred from suing the Defendants in the District Court Action without Bankruptcy Court leave pursuant to the *Barton* doctrine.[15]

On March 20, 2025, Appellant filed a "Motion for Comfort" in the Adversary Proceeding, along with a motion seeking expedited consideration.[16]  The Motion for Comfort sought, effectively, an order from the Bankruptcy Court determining that the *Barton* doctrine did not apply to his filing of the District Court Action.  Defendants filed objections.[17]  On April 23, 2025, Appellant filed the "Motion for Leave to Pursue Claims Against [the Defendants] in the United States District Court in their Individual Capacity" ("the Motion for Leave" and together with the Comfort Motion, the "Motions for Leave"), seeking leave of the Bankruptcy Court to sue the Defendants in this Court (although Appellant had already initiated the District Court Action).[18]  In the Motions for Leave, Appellant asserted that the Bankruptcy Court lacked jurisdiction to determine application of the *Barton* doctrine and that the *ultra vires* exception to the *Barton* doctrine applied.

Meanwhile, on April 4, 2025, Appellant filed aa Second Amended Complaint in the District Court Action, which asserts 12 claims ranging from breach of the Trustee's statutory duties to civil

---

[13]    District Court Action D.I. 8-10.

[14]    District Court Action D.I. 12-15.

[15]    District Court Action D.I. 13 at 7 & D.I. 20 at 7.

[16]    Adv. D.I. 32, 33.

[17]    Adv. D.I. 43, 55.

[18]    Adv. D.I. 58.

conspiracy to abuse of process, all arising from the Trustee's Demand and the Trustee's Reply.[19] Through one count, Appellant alleges the Defendants violated the Free Exercise Clause of the First Amendment by suggesting in the Trustee's Reply that Appellant "may wish to consult with appropriate counsel" due to the "potential criminal liability" that could arise from him taking the Withdrawn Funds.[20]  According to the SAC, Appellant repeated the statements to his wife, which was overheard by his son, who allegedly suffered "potentially permanent damage to [his] religious faith" as a result of overhearing Appellant's conversation, and the SAC asserts claims against the Trustee for this event.[21]

Defendants again moved to dismiss, and briefing was completed.[22]  On May 8, 2025, this Court stayed the District Court Action pending the Bankruptcy Court's decision on the applicability of the *Barton* doctrine.  On May 30, 2025, the Bankruptcy Court (a) issued its Opinion denying the Motions for Leave and (b) entered the corresponding Orders Denying Leave.[23]  The Opinion explains that "[a] Chapter 7 trustee enjoys a considerable level of immunity from suits when acting in furtherance of their statutory duties," and "[o]ne of the most durable protections for the Chapter 7 trustee is the so-called Barton doctrine," which "prevents harassment of and distraction to a Chapter 7 trustee for simply doing their job." *In re Prehired*, 2025 WL 1549911 at *1.  Noting that the *ultra vires* exception to the *Barton* doctrine is "extremely narrow," and has not been formally adopted by the Third Circuit, the Bankruptcy Court determined that it "need not decide whether

---

[19]     District Court Action D.I. 17.

[20]     *Id*. at Count VII ¶¶ 300-325.

[21]     *Id*. ¶¶ 138-155.

[22]     District Court Action D.I. 20, 22, 24-27.

[23]     Adv. D.I. 69, 70, 71.

there is an ultra vires exception to the *Barton* doctrine because even if there is, the [D]efendants acted within their official capacities" by demanding the return of the $74,000. *Id*. at *5-6. First, "[p]ursuing the return of funds that are property of the estate is at the heart of a trustee's duties." *Id*. at *7. Second, advising Appellant that he should seek legal advice "because of potential criminal liability was not wrongful and was not offered outside the scope of [Defendants'] official duties." *Id*. Rather, such advice is expressly permitted and was indeed warranted under these facts . . .." *Id*. Having determined that "Defendants' actions are paradigmatic examples of conduct protected under the Barton Doctrine," *id*. at 8, and that no action against the Trustee and his professionals was warranted by the facts presented, the Bankruptcy Court denied the Motions for Leave. *Id*.

### D.     The Appeal

Appellant timely appealed the Orders Denying Leave (D.I. 1), and the appeal is fully briefed (D.I. 8, 9, 10, 11). No party requested oral argument. Appellant identifies the following issues on appeal: whether the Bankruptcy Court (1) "exceeded its authority by ruling on constitutional and tort claims outside its jurisdiction"; (2) "exceeded its constitutional authority under *Stern v. Marshall*, 564 U.S. 462 (2011), by immunizing constitutional violations that must receive Article III adjudication"; (3) "misapplied Barton v. Barbour, 104 U.S. 126 (1881), by failing to recognize the Supreme Court's express ultra vires exception for receivers acting 'wrongfully'"; and (4) "violated mandatory Third Circuit precedent requiring liberal construction of pro se pleadings and application of relevant law regardless of specific citation . . .." (D.I. 1 at 2.)[24]

---

[24]   Appellant spends a large portion of his opening brief (*see e.g.*, D.I. 8 at 43-54) arguing that the Bankruptcy Court issued an order improperly revoking his e-filing privileges following Appellant's filing of documents with fabricated legal citations. (*See* Adv. D.I. 83-84) (Order Revoking E-Filing Privileges and accompanying letter). Appellant did not appeal the Bankruptcy Court's revocation of his e-filing privileges. (D.I. 1; 28 U.S.C. § 158(a)(1)). Accordingly, the Court does not consider those arguments. The Court observes, however, that the revocation was not a "sanction," and the Bankruptcy Court's decision to revoke such privileges based on Appellant's citations to fabricated legal authority can hardly constitute

## II.    <u>JURISDICTION</u>

This Court has appellate jurisdiction to hear appeals "from final judgments, orders, and decrees." 28 U.S.C. § 158(a).  The denial of a motion seeking leave to sue under the *Barton* doctrine, *see Barton*, 104 U.S. at 126, is a final order.  *In re United Tax Grp*., LLC, 2018 WL 1187395, at *3 (D. Del. Mar. 7, 2018).  The Court reviews the Bankruptcy Court's factual findings for clear error, and questions of law are reviewed under a de novo standard.  *In re VistaCare Grp., LLC*, 678 F.3d 218, 224 (3d Cir. 2012).  Court "break[s] down mixed questions of law and fact, applying the appropriate standard to each component."  *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992).  A factual finding is not clearly erroneous unless the Court is "left with the definite and firm conviction that a mistake has been committed."  *United Tax Grp.,* 2018 WL 1187395, at *3 (quoting *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948)).

The Court reviews the Bankruptcy Court's "decision [whether] to grant a motion for leave to sue a trustee under the deferential abuse of discretion standard."  *VistaCare*, 678 F.3d at 224.  Application of that standard dictates that the Court will not reverse unless the Bankruptcy Court's "decision is arbitrary, fanciful, or clearly unreasonable – in short, where no reasonable person would adopt the . . . court's view."  *Id*. at 232 (quoting *United States v. Green*, 617 F.3d 233, 239 (3d Cir. 2010)).

---

an abuse of its discretion. *In re United Tax Grp., LLC*, 2018 WL 385185, at *1 (D. Del. Jan. 11, 2018); *Tanner v. Idaho Dep't of Fish & Game,* 2022 WL 1223998, at *1 (9th Cir. Apr. 26, 2022).

III.     **ANALYSIS**

A.     **Pursuant to the *Barton* Doctrine, the Bankruptcy Court Properly Reviewed the SAC to Determine Whether Leave Should Be Granted to Pursue the Claims Outside of the Bankruptcy Court**

Appellant's primary arguments on appeal are predicated on his assertion that the Bankruptcy Court somehow lacked authority to adjudicate his Motions for Leave. As Defendants correctly explain, that argument ignores the gatekeeping function the Bankruptcy Court must undertake to protect its jurisdiction and the integrity of bankruptcy proceedings. Established well over a century ago in a receivership case, the *Barton* doctrine provides that "before suit is brought against a receiver[,] leave of the court by which he was appointed must be obtained." *Barton*, 104 U.S. at 127. This requirement is necessary "to ensure a consistent and equitable administration of the receivership property." *VistaCare*, 678 F.3d at 225 (quoting *Barton*, 104 U.S. at 128-29). Thus, "requiring a party with claims against a receiver to obtain permission from the appointing court would prevent the usurpation of the powers and duties which belong[] exclusively to the appointing court." *Id*.

As the Third Circuit has explained, the *Barton* doctrine extends to bankruptcy trustees—*see VistaCare*, 678 F.3d at 232 ("we hold that the *Barton* doctrine remains valid, and, therefore, subject to the exception in § 959(a), a party must first obtain leave of the bankruptcy court before it brings an action in another forum against a bankruptcy trustee for acts done in the trustee's official capacity"—as well as bankruptcy trustees' counsel. A bankruptcy trustee "is an officer of the court that appoints him," and, therefore, that court "has a strong interest in protecting him from unjustified personal liability for acts taken within the scope of his official duties." *Lebovits v. Scheffel (In re Lehal Realty Assocs.),* 101 F.3d 272, 276 (2d Cir. 1996). As the Third Circuit has further explained, the doctrine enables bankruptcy courts to monitor the work of the trustee more effectively, and to ensure the trustee is fulfilling his obligations. *See VistaCare*, 678 F.3d at 230. The doctrine thus

9

"sets up a gatekeeping function that recognizes the appointing court's jurisdiction and allows that court to monitor the trustee's work and control burdensome litigation." *In re Inmet Mining, LLC*, 2024 WL 3586837, at \*2; *see also In re Christensen*, 598 B.R. 658, 665 (Bankr. D. Ut. 2019) ("Barton is strictly a 'jurisdictional gatekeeping doctrine'").

Appellant was required to seek leave of the Bankruptcy Court to commence an action against the Defendants in this Court. To obtain such leave, Appellant was required to "make a prima facie case against the [Defendants]" to the Bankruptcy Court, and show "that [his] claim is not without foundation." *VistaCare*, 678 F.3d at 232. Appellant failed to meet his burden. The Bankruptcy Court correctly applied the *Barton* doctrine, screened the SAC, and found that the Defendants' actions were "paradigmatic examples of conduct protected under the Barton Doctrine." *In re Prehired*, 2025 WL 1549911, at \*8. Because Appellant's pleading lacked foundation, the Bankruptcy Court properly declined to grant leave. *Id*.

**B.     The Bankruptcy Court, as the Appointing Court, Maintained Exclusive Jurisdiction to Screen Appellant's Claims Against the Trustee**

Appellant argues that only this Court had jurisdiction to screen his claims against the Trustee in the District Court Action. (*See* D.I. 8 at 22-30). Appellant is mistaken. As explained in *VistaCare,* "the Barton doctrine was not dependent on any federal statute, but instead was based on principles of common law." *VistaCare*, 678 F.3d at 225 (citing *McNulta v. Lockridge*, 141 U.S. 327, 330 (1891)). Thus, after *Barton*, "courts in an unbroken line of cases imposed as a matter of federal common law, a requirement that a party seeking to sue an equity receiver must first obtain the permission of the appointing court." *VistaCare*, 678 F.3d at 225 (internal quotations omitted). Critically, the Third Circuit explained, the *Barton* doctrine is jurisdictional such that absent permission from the appointing, "no other court would have jurisdiction to hear the suit." *Id*.; *see*

*also In re Truong*, 2021 WL 3414143, at *1 (3d Cir. Aug. 5, 2021) (per curiam) ("the Barton doctrine is jurisdictional in nature").

Appellant was required to seek leave of the Bankruptcy Court to file the District Court Action. The Bankruptcy Court, as the as the appointing court, has sole authority to screen claims against a chapter 7 trustee and his professionals. *See VistaCare*, 678 F.3d at 228. This rule holds true even where, as here, the complaint is to be brought in the federal district court in the same district as the appointing bankruptcy court. "The District Court is a different forum than the Bankruptcy Court for purposes of the *Barton* Doctrine. This is true despite the fact that a bankruptcy court's jurisdiction is derivative of the district court's [jurisdiction]." *Blixseth v. Brown,* 470 B.R. 562, 566 (D. Mont. 2012) (citing 28 U.S.C. §§ 157, 1334; *Kashani v. Fulton (In re Kashani),*190 B.R. 875 (9th Cir. BAP 1995)). As the court in *Kashani* explained:

> The Debtors have argued on appeal that the requirement for leave to sue the Trustee does not apply in either bankruptcy court or the district court, because each court would qualify as the appointing court by virtue of the jurisdiction conferred upon the district court under 28 U.S.C. § 1334 and the referral of the district court's jurisdiction to the bankruptcy court by way of 28 U.S.C. § 157(a). While it is true that 28 U.S.C. § 157(a) does allow the district court to refer jurisdiction to the bankruptcy court, both courts cannot concurrently preside over the same aspects of the case. Once the district court refers the case to the bankruptcy court, unless the district court withdraws that reference, in whole or in part pursuant to 28 U.S.C. § 157(d), the case is within the subject matter jurisdiction of the bankruptcy court. . . .
>
> We conclude that leave to sue the trustee is required to sue in those federal courts other than the bankruptcy court which actually approves the trustee's appointment.

*In re Kashani*, 190 B.R. at 885. *See also Carroll v. Abide,* 788 F.3d 502, 506 (5th Cir. 2015) ("the *Barton* doctrine has been applied consistently to require leave of the bankruptcy court even when the suit was filed in the federal district court of the same district"); *Posin v. Sheehan,* 2011 WL 3022305, at *2 (N.D.W. Va. July 22, 2011) ("Courts applying the *Barton* doctrine have held that

11

the district court in the same federal district as the appointing bankruptcy court is considered a court other than the appointing court for purposes of determining subject matter jurisdiction"). As the Defendants point out, the Third Circuit shares this view. For example, the Third Circuit affirmed the dismissal by the United States District Court for the District of New Jersey of a complaint against a chapter 7 trustee for lack of subject matter jurisdiction under the *Barton* doctrine. *See Smith v. Dobin*, 852 F. App'x 49, 51 (3d Cir. 2021).

### C.       Appellants' Additional Jurisdictional Arguments Fail

First, Appellant contends that the Bankruptcy Court committed legal error because it lacked jurisdiction to pass on alleged constitutional or state law-based claims. (*See* D.I. 8 at 22, 23-26). This argument fails. As Defendants correctly explain, the Bankruptcy Court did not decide those claims. Rather, the Bankruptcy Court exercised its authority and discretion to screen those claims consistent with the *Barton* doctrine.

The apparent "jurisdiction" upon which Appellant's argument relies concerns Article III subject matter jurisdiction. *See id*. But that is not the jurisdictional issue presented under the *Barton* doctrine, nor is it relevant. The *Barton* doctrine imposes—as a matter of federal common law—a requirement that the appointing court (*i.e.*, the Bankruptcy Court here) give permission to sue a bankruptcy trustee and his counsel in a different court. *See Mathis v. Phil. Elec. Co.*, 644 F. App'x 113, 116 n.3 (3d Cir. 2016) ("The *Barton* doctrine is described as jurisdictional, but it is the product of federal common law and does not emanate from Article III"). That is the extent of the "jurisdiction" or authority exercised by the Bankruptcy Court, and Appellant's assertions that the Bankruptcy Court somehow exercised subject matter jurisdiction under Article III must be rejected. As its ruling makes clear, the Bankruptcy Court did not pass on Appellant's underlying claims. Rather, the Bankruptcy Court merely performed the gatekeeping function the Supreme Court and Third Circuit recognized as inherent in an appointing court to assess whether alleged claims against

12

a trustee have foundation.  The Bankruptcy Court merely exercised its exclusive "jurisdiction" as gatekeeper and found not only that the *Barton* doctrine applied, but that Defendants' actions were protected by that very doctrine.

Second, Appellant asserts that the Bankruptcy Court "exceeded its constitutional authority by immunizing constitutional violations" that require Article III adjudication—claims commonly referred to as "*Stern* claims."  (*See* D.I. 8 at 26 (citing to *Stern v. Marshall*, 564 U.S. 462, 484 (2011)).  Although not entirely clear, Appellant appears to argue that, because he asserted *Stern* claims, the Bankruptcy Court lacked the requisite authority (or jurisdiction) to, in Appellant's words, "immunize" those claims.  Appellant effectively argues that *Stern* trumps, supersedes or creates an exception to the *Barton* doctrine.  Appellant is mistaken, as nothing in *Stern* alters, diminishes, or eliminates the *Barton* doctrine or the Bankruptcy Court's gatekeeping authority.

In *Stern*, the Supreme Court held that bankruptcy courts lack constitutional authority to enter final judgment on state-law counterclaims unless they "stem [ ] from the bankruptcy itself or would necessarily be resolved in the claims allowance process."  *Villegas v. Schmidt*, 788 F.3d 156, 158–59 (5th Cir. 2015) (quoting *Stern*, 564 U.S. at 499).  Notwithstanding that ruling, the Fifth Circuit in *Villegas* held that *Barton* remains the law, and nothing in *Stern* vitiates the doctrine.  *Id*. at 158-59.  *Villegas* is instructive here, as it addressed the very argument advanced by Appellant here on similar facts.  As the Fifth Circuit explained:

> [P]laintiffs argue that the *Barton* doctrine does not apply to "*Stern* claims" over which the bankruptcy court lacks final adjudicative authority. They further contend that their negligence and fiduciary duty claims against [the bankruptcy trustee] are such claims. We conclude that the *Barton* doctrine continues to apply regardless of whether the plaintiffs' claims qualify as *Stern* claims . . ..

*Id*. at 158.  As the Fifth Circuit further explained, "[w]e are not called upon in this case to provide all the details regarding how a party should, post-*Stern*, proceed under *Barton*.  We hold only that *a*

13

***party must continue to file with the relevant bankruptcy court for permission to proceed with a claim against the trustee***." *Id*. (emphasis added).  Other courts agree with *Villegas*, and similarly hold that the *Barton* doctrine remains the law after *Stern*.  *See Blixseth*, 470 B.R. at 572 ("*Stern* does not bar the Bankruptcy Court from issuing proposed findings of fact and conclusions of law in this matter.  It therefore does not bar application of the *Barton* Doctrine either."); *Providence Hall Assocs. Ltd. P'ship v. Albert*, 2019 WL 1223307, at \*1 (E.D. Va. Mar. 15, 2019) (holding bankruptcy court "properly found that the *Barton* doctrine applies to cases raising *Stern* claims").

Appellant's argument ultimately finds no support in case law.  *Stern* does not affect application of the *Barton* doctrine because the latter is a jurisdictional bar to filing suit against a bankruptcy trustee; it is not a decision on the merits.  *Providence Hall,* 2019 WL 1223307, at \*1; *see also Benta v. Christie's Inc.*, 2021 WL 2546453, at \*9 (D.V.I. Jun. 21, 2021) ("Whether the Bankruptcy Court would have jurisdiction to rule on the merits of Plaintiffs' claims is a completely different legal issue from seeking permission to pursue their claims against agents of the Bankruptcy Court").

### D.      The Bankruptcy Court Correctly Declined to Apply the *Ultra Vires* Exception

Appellant asserts that the Bankruptcy Court erred in applying the *Barton* doctrine because his claims are subject to the *ultra vires* exception.  The *ultra vires* exception derives from the *Barton* decision itself.  *See Barton*, 104 U.S. at 134.  In recognizing the jurisdictional limits of non-appointing courts, the Supreme Court nonetheless explained, albeit briefly, that in certain instances a receiver (and now, a bankruptcy trustee) may be sued in a foreign court:

> Claims against the company must be presented in due course, as the court having charge of the case may direct.  But if, by mistake or wrongfully, the receiver takes possession of property belonging to another, such person may bring suit therefor against him personally as a matter of right; for in such case the receiver would be acting *ultra vires*.

*Id.* at 134.  "Over the years, courts have curtailed the scope of the 'ultra vires' exception to the *Barton* Doctrine.  While no court has said as much definitively, it may be no exaggeration to state that the exception applies only in cases in which a receiver wrongfully seizes or controls non-receivership property." *DMW Marine, LLC*, 509 B.R. 497, 509 (Bankr. E.D. Pa. 2014).  This Court has agreed.  *See United Tax Grp.*, 2018 WL 1187395, at *5 ("In absence of other clear authority, the Third Circuit's interpretation of the *Barton* doctrine [in *VistaCare*],[25] and particularly of the policies underlying the doctrine, supports the Bankruptcy Court's conclusion that, ***to the extent the Third Circuit would even recognize the ultra vires exception***, it would be limited to seizure of non-estate property.") (emphasis added).  Other circuits join this view.[26]

Thus, notwithstanding the errors alleged by Appellant, the Bankruptcy Court correctly explained that the "extremely narrow" *ultra vires* exception to the *Barton* doctrine has not been formally adopted by the Third Circuit, and those cases which do apply it, "do so only in the context of wrongful possession and seizure of property by the trustee or receiver." *Id.* at *6.  Therefore, the exception, even if recognized, would have no application here.  Appellant never claims that the Trustee actually seized anything, let alone non-estate property.  On the contrary, the Trustee only sought to recover estate property taken by Appellant and his company FourLetter.

---

[25]  *VistaCare* addressed whether the *Barton* doctrine even applied to bankruptcy trustees, and if so, whether the bankruptcy court abused its discretion in permitting the plaintiff to proceed in state court.  *See VistaCare*, 678 F.3d at 227.

[26]  *See Satterfield v. Malloy*, 700 F.3d 1231, 1235 (10th Cir. 2012) ("Although this Circuit has not specified the scope of the *ultra vires* exception to the *Barton* doctrine, other courts have most commonly relied upon the exception when a trustee wrongfully seizes possession of a third party's assets"); *Matter of Foster*, 2023 WL 20872, at *5 (5th Cir. Jan. 3, 2023) ("Although this court has not yet addressed the breadth of the ultra vires exception to the *Barton* doctrine, other circuits have applied the exception narrowly and only 'to the actual wrongful seizure of property by a trustee'") (quoting *In re McKenzie*, 716 F.3d 404, 415 (6th Cir. 2013)); *Juravin v. Florida Bankruptcy Trustee*, 2024 WL 4677417, at *6 (11th Cir. Nov. 5, 2024) (explaining the "scope of the *ultra vires* exception depends on only whether the bankruptcy trustee seized non-debtor property.")

Even applying the *ultra vires* exception as expansively as Appellant urges, his argument ultimately fails, as all of the Defendants acted squarely "within the scope of their duties." *VistaCare*, 678 F.3d at 232 ("[A] party must first obtain leave of the bankruptcy court before it brings an action in another forum against a bankruptcy trustee for acts done in the trustee's official capacity."). Here, the Bankruptcy Court "f[ound] that the [] Defendants acted in their official capacities to address an intentional wrong that the Plaintiff committed against the Debtors' estates and creditors" and such "actions are paradigmatic examples of conduct protected under the Barton Doctrine." *In re Prehired,* 2025 WL 1549911 at *8; *see also id*. at *1 (the Trustee has a duty to "collect and reduce to money the property of the estate") (quoting 11 U.S.C. § 704(a)(1)).

The Bankruptcy Court properly rejected Appellant's attempts to cast the Defendants' conduct as exceeding their statutory authority in hopes of triggering the exception. (*See* D.I 8 at 32-37). "Courts recognize a 'presumption in favor of the trustee, counsel, or other bankruptcy official' that that appointed person is acting within the scope of official duty." *In re Day*, 2014 WL 636797, at *23 (Bankr. D.N.J. Feb. 7, 2014) (quoting *In re Lowenbraun,* 453 F.3d 314, 322 (6th Cir. 2006)). Those acts are presumed to be part of the duties of the trustee or his counsel "unless Plaintiff initially alleges at the outset facts demonstrating otherwise." *McDaniel v. Blust*, 668 F.3d 153, 157 (4th Cir. 2012) (internal quotation marks omitted). Thus, the burden falls on Appellant to come forward with facts—not merely supposition or subjective beliefs—to show that the conduct he complains of fell outside the Defendants' duties. *See id.* But Appellant's portrayal of the Defendants' conduct is supported only by conclusory assertions which are belied by the record, including the parties' correspondence itself.

Appellant points to two alleged acts or circumstances to make his case that the Defendants did not act in their official capacity and, thus, that their conduct was *ultra vires*. (*See* D.I. 8 at 34-35). First, Appellant claims that the wrongful seizure at issue here is the Defendants' interference

16

with "constitutionally protected religious liberty and family integrity." *Id.* at 34. Appellant's assertions support no conclusion that there was any seizure, nor violation of any constitutional right. The exhibits to the SAC demonstrate that what actually happened is the Trustee sent two letters (as trustees do) to Appellant demanding the return of money he and FourLetter took in violation of the Bankruptcy Code's automatic stay. That was all. Neither the Trustee nor his counsel ever spoke with or directed any communication to anyone other than Appellant (and FourLetter), and certainly not Appellant's son. Whatever Appellant may have said or shared in the presence of his family is something for which he alone is responsible. Thus, any alleged constitutional violation—*e.g.*, the supposed religious or family interference Appellant complains of—is of his own making.

Second, Appellant asserts that Defendants' conduct met the *ultra vires* exception to the *Barton* doctrine as the Trustee's Reply made purported criminal threats in violation of "established protocols," namely, the Chapter 7 Trustee Handbook ("the "Handbook).[27] Again, this assertion is belied by the undisputed record. Nothing in the Trustee's communications gave rise to a threat of criminal prosecution, which makes sense, as the Trustee has no prosecutorial authority. The Trustee's letters merely suggested that Appellant consult counsel given the gravity of the situation.

In sum, the Bankruptcy Court exercised its exclusive authority (as it had to do) when it adjudicated the Motions for Leave pursuant to the *Barton* doctrine. Appellant presents no facts to evince, let alone establish, that the *ultra vires* exception should have been applied here. As Defendants point out, the only remaining issue is whether the Bankruptcy Court properly exercised its discretion when it denied the Motions for Leave. Although Appellant's appeal does not appear

---

[27] Executive Office for U.S. Trustees, U.S. Dep't of Justice, Handbook for Chapter 7 Trustees (Oct. 1, 2012), available at https://www.justice.gov/ust/private-trustee-handbooks-reference-materials/chapter-7-handbooks-reference-materials (last visited Feb. 19, 2026). The Trustee Handbook, although not entitled to deference, serves as guidance for how Chapter 7 trustees should fulfill their duties. *In re Bird*, 577 B.R. 365, 375 (B.A.P. 10th Cir. 2017).

to argue the Bankruptcy Court abused that discretion—his briefs focus on the Bankruptcy Court's "jurisdiction" and whether the *ultra vires* exception applied—the Court finds no basis upon which an abuse of discretion can rest.  There is simply nothing in the record or the ruling to suggest that the Bankruptcy Court's decision was "arbitrary, fanciful, or clearly unreasonable."

### E.      The Bankruptcy Court Liberally Construed Appellant's Filings

Appellant contends that the Bankruptcy Court erred because it "violated" or "disregarded" the principle that pro se filings are to be liberally construed by "ignoring" his claim that the Withdrawn Funds were not estate property when his misappropriated them.  (*See* D.I. 8 at 13, 22, 37; D.I. 10 at 27-30).  This contention ignores that the Opinion itself explains the opposite is true: "Because the Plaintiff is proceeding *pro se,* this Court has construed the Plaintiff's filings liberally and viewed them in the light most favorable to the Plaintiff."  *In re Prehired*, 2025 WL 1549911 at *8; *accord id*. at *2 n.7 ("[Appellant's] filings are to be liberally construed, and 'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).  None of Appellant's arguments support the idea that the Bankruptcy Court did not construe his filings liberally.

Appellant contends that the Bankruptcy Court should have, but did not, "apply[] relevant law regardless of" whether Appellant cited it in his papers.  (D.I. 8 at 13, 37-38).  But Appellant's opening brief points to no instance in which the Bankruptcy Court should have applied law that Appellant failed to cite.  Without that information, Appellant has cited no error, just a conclusory assertion bereft of explanation or record citation.

Appellant further contends that the Bankruptcy Court erred by "making adverse factual findings at the motion stage" and "dismissing claims without proper analysis."  (D.I. 8 at 22, 37-38).  The latter argument confuses the test for whether leave is appropriate under the *Barton* doctrine with the standards for considering whether to grant a motion to dismiss.  The Bankruptcy Court did

not dismiss Appellant's claims, it simply declined to grant leave to pursue those claims outside the Bankruptcy Court because they lack foundation.  Appellant cites no case law in support of his assertion that the Bankruptcy Court cannot make basic factual determinations in adjudicating a *Barton* motion for leave, and the law is to the contrary.  *See* Fed. R. Bankr. P. 7052 (providing for findings of fact and conclusions of law in adversary proceedings), and 9014(c)(1) (providing that Fed. R. Bankr. P. 7052 applies in contested matters); *In re EBW Laser, Inc.*, 2012 WL 3490417 (Bankr. M.D.N.C. Aug. 14, 2012) (issuing findings of fact pursuant to Fed. R. Bankr. P. 7052 and 9014 in adjudicating *Barton* motion).

Appellant complains that the Bankruptcy Court did not accept his arguments that the Withdrawn Funds were not estate property.  (*See* D.I. 8 at 38).  The Court agrees that these arguments are based on Appellant's misunderstanding or mischaracterization of the content and effect of a stipulated judgment between the Trustee, various states, and the Consumer Financial Protection Bureau, which document has no bearing on whether the Withdrawn Funds are estate property.  Likewise, whether or not the Trustee transferred the funds to another bank or even another account has no bearing on whether the funds are estate property.  (*See* D.I. 8 at 38).  As Defendants point out, Appellant offers no authority for his contention that the Trustee was not permitted to retain the funds in the Wells Fargo Accounts—accounts that are property of the estate, as verified by Appellant when verified the Debtors' Schedules of Assets and Liabilities.

The Bankruptcy Court properly rejected Appellant's "functional abandonment" argument as wrong as a matter of law; there is no such concept in the context of a bankruptcy estate.  "Property of the estate cannot be informally abandoned." *In re Nilhan Devs., LLC,* 631 B.R. 507, 537 (Bankr. N.D. Ga. 2021).  Instead, it is governed by Section 554 of the Bankruptcy Code, which provides that the means to abandon an asset during the pendency of a bankruptcy is through appropriate notice, or upon motion and court order to that effect.  *In re Gagliardi*, 290 B.R. 808, 818 (Bankr. D.

Colo. 2003).  None of those procedural requirements occurred in the bankruptcy case, and Appellant does not claim otherwise.  Unless otherwise ordered, "property of the estate that is not abandoned . . . and that is not administered in the case remains property of the estate."  11 U.S.C. § 554(d).

Along the same lines, Appellant's purported "good faith reliance" on his subjective impression that the Trustee had abandoned the Withdrawn Funds fails as a matter of law because it cannot overcome his actual knowledge that the funds were property of the estate—knowledge evident from the fact that Appellant himself signed and verified the Debtors' Schedules identifying the Wells Fargo Accounts as estate property.

The Court agrees that, at bottom, Appellant disagrees with the conclusion reached by the Bankruptcy Court, which he contends could only result from the court not construing his papers liberally.  However, "[l]iberal construction of pro se pleadings [simply] means paying attention to what the litigant has alleged and using common sense."  *Gindraw v. Sanford*, 2024 WL 3179781, at *2 (W.D. Pa. Jun. 26, 2024).  "[I]t does not require the court to ignore the obvious for the implausible."  *Fennell v. Pirozzola*, 2019 WL 13272500, at *1 (W.D. Pa. June 24, 2019), report adopted, 2019 WL 13272501 (W.D. Pa. Sept. 25, 2019), *aff'd*, 816 F. App'x 745 (3d Cir. 2020).

## IV.    CONCLUSION

The Bankruptcy Court properly exercised its exclusive gatekeeping discretion under the *Barton* doctrine in denying leave to sue the Trustee and his counsel outside of the Bankruptcy Court for actions undertaken in furtherance of their duties.  Accordingly, the Orders Denying Leave will be affirmed.  An appropriate order will be entered.

20